**CAL-WOOL MARKETING ASSOCIA-TION, a California agricultural cooperative, Plaintiff,**

v.

**O'CONNOR LIVESTOCK COMPANY, an Oregon corporation, Defendant.**

**Civ. No. 213-59.**

United States District Court
D. Oregon.
May 23, 1960.

Carl Robert Wells, McCormick & Wells, Portland, Or., for plaintiff.

Thomas H. Tongue, Hicks, Davis, Tongue & Dale, Portland, Or., and David R. Vandenberg, Jr., Klamath Falls, Or., for defendant.

EAST, District Judge.

It appears from the evidence, by way of background material relationship and premises, that the 1956 Cooperative Wool-Marketing Agreement in writing between the parties, contained as a substantial part thereof the collateral or supplemental oral agreement and understanding to the effect that Frank Mecham, as agent for the plaintiff, would advise by telephone before the consummation of any sale of the O'Connors' wool and quote the price, net, to the O'Connors and that O'Connors would "have the final say" as to whether to sell at such price, and furthermore, that O'Connors would have the privilege in the event of a good bona fide bid for their wool from others and, if desired by defendant, to so inform the plaintiff and that arrangements would then be made to consummate such third-party sale, and, further, that the 1956 Agreement and Arrangement was performed in accordance with such understanding in that Mecham did call before all sales and report the prices, net, to O'Connors of all offers, and the final settlement (Exhibit 64) was at prices completely, or at least substantially, in accord with the figures previously quoted.

The Court finds and concludes that the September 6, 1958, Cooperative Wool-Marketing Agreement in writing (Exhibit 1) between the parties, now in dispute herein, likewise contained as a substantial and material part thereof the collateral and supplemental oral agreement and understanding of like effect and substance as above found with respect to the 1956 Agreement and that both Heins and Mecham, as agents of the plaintiff, clearly understood that the 1958 Agreement was subject to the same understandings as to prior quotation of prices feature as in the 1956 Agreement.

The Court finds and concludes that the plaintiff was under no legal impediment or disability to enter into the 1958 Agreement and understanding with the defendant, which now inures to the benefit or release of the defendant, and that the said 1958 Agreement and Arrangement for the marketing of defendant's 1958 wool clip by plaintiff was a valid and binding agreement and arrangement of the parties. Further, that the defendant did not, on or before December 31, 1958, pursuant to the terms of the written portion of said Agreement, terminate or withdraw from said Agreement and that, therefore, the said 1958 written and oral Agreement and Arrangement continued forward and remained as a binding wool-marketing agreement between the parties for the defendant's 1959 wool clip. That the defendant has failed and neglected to deliver any part of its 1959 wool clip to the plaintiff pursuant to the terms of said Marketing Agreement and Arrangement so continued.

The Court finds that the plaintiff failed to cause its agents to accurately report to the O'Connors the net prices to O'Connors for the offers received by plaintiff for, and sales prices of, all but the first sale of the O'Connors' four major grades. And that all three sales made after the withdrawal date of December 31, 1958, agents of the plaintiff reported all offers and sales at figures substantially higher than the actual net prices ultimately accounted and paid to the O'Connors for such wool. That such inaccuracies lulled the O'Connors into a false sense of security as to their ultimate returns for each ensuing sale of their 1958 wool clip.

That the defendant, as a contracting producer of plaintiff, stood in the position of a member of plaintiff Association, and therefore it was not a contracting party of equal rank with the plaintiff.

But, on the contrary, the plaintiff stood in an advisory and fiduciary capacity toward the defendant producers. The plaintiff, through the repeated inaccuracies on the part of its agents, breached its high duty of good faith toward the defendant, and the defendant's agents thereby were permitted to be misled and induced not to protest or otherwise take action to protect defendant's interests, resulting to defendant's detriment and probable loss. The Court concludes that the aforesaid conduct on the part of the agents of plaintiff constituted inequitable conduct and treatment of and toward the defendant in the course of the performance on defendant's part of the single and continuing 1958 and 1959 Wool-Marketing Agreement and Arrangement as found and gives the plaintiff "unclean hands" in these equitable proceedings by it for injunctive relief and specific performance of the contract. Therefore, the Court concludes that the plaintiff is not entitled to any equitable relief herein and is relegated to any remedies it may have at law, and the temporary injunctive relief granted defendant should be dissolved.

It is further concluded that in order to fully determine and litigate the matters between the parties herein, all questions and issues of plaintiff's remedies at law and defendant's defenses and counterclaims at law, respectively, arising from the transactions and relationships between the parties, as set forth in the pretrial order herein and found as aforesaid, are reserved, with leave on the part of the plaintiff to form its contentions of damage or recovery at law for the alleged breach by defendant of the 1958 Cooperative Wool-Marketing Agreement and Arrangement as above found, and on the part of the defendant to form its contentions of defense or counterclaims thereto, all as matters at law.

Costs are not granted to either party in these equitable proceedings.

Counsel for the defendant is requested to prepare and submit appropriate findings of fact, conclusions, and decree, in conformity with the foregoing.